The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman and the briefs on appeal. Both parties waived oral arguments before the Full Commission. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner. Accordingly, the Full Commission affirms the decision of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 9 February 1999 as:
 STIPULATIONS
1. The date of the alleged injury which is the subject of this claim is 16 April 1998.
2. On such date, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
3. On such date, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
4. On such date, defendant-employer employed three or more employees.
5. Defendant-employer is insured by CIGNA/ESIS.
6. Plaintiffs average weekly wage will be determined from a Form 22.
In addition, the parties stipulated into evidence a packet of medical records and reports which were submitted by letter of 12 July 1999. The Pre-Trial Agreement dated 8 February 1999 is incorporated by reference.
***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff, who is fifty years old, began working for defendant-employer in September 1996. He worked in the shipping department where he packaged valves. Defendant-employer made valves of brass, carbon and steel for use with pipes carrying water, gas or oxygen. The valves varied in size with the largest one that he had to pack fitting a two-inch pipe. Those valves weighted ten to eleven pounds each. Plaintiffs job involved unfolding a cardboard carton, shaping it into a box, placing valves into the box, stuffing packing paper around the valves, closing and stapling the box, labeling it and then placing the box on a buggy.
2. Some of the valves came to plaintiff in the open position and he would have to insert a seal kit, fold it down and then turn the handle to close the valve before he placed it into the box.
3. Plaintiff packed valves of various sizes during the day. He would pack between four and eight valves to a carton, depending upon the size of the valves and whether they had to have a seal kit inserted. During the course of a workday, he would pack several hundred valves. His duties also included taking the buggy with the packed valves to a storage area where he would place the boxes onto shelves. Apparently the heaviest boxes were supposed to go on the middle shelf, but plaintiff was not aware of that fact. Plaintiff was under the impression that they went on the lowest shelf near the floor, so that is where he would put them.
4. On 16 April 1998, plaintiff had a buggy with packed boxes to unload in the storage area. The boxes contained two-inch valves and weighed between sixty and sixty-five pounds each. Plaintiff had to stoop down and shove the boxes forward into the racks in order for all of the boxes to fit. As he was putting one of the boxes onto the lowest shelf, plaintiff experienced a burning pain in his right elbow which radiated down to his fingers. Plaintiff reported his injury to his supervisor.
5. The following day, plaintiff was sent to Dr. James who was of the impression that he had medial epicondilitis, so he was given a tennis elbow strap and anti-inflammatory medication. By the next office visit on 8 May 1998, plaintiffs symptoms were worse with more pain up and down his arm, so he was referred to Dr. Rendall, an orthopedic surgeon. Dr. Rendall advised him to reduce the number of hours he was working and gave him restrictions. By 28 May 1998, there were some improvements in his elbow symptoms but he had additional symptoms indicating involvement of the median nerve. Consequently, Dr. Rendall ordered nerve conduction studies. The tests revealed evidence of carpal tunnel syndrome but did not show evidence of entrapment of the nerve at the pronator teres, an area on the upper forearm where plaintiff was having symptoms. Nevertheless, Dr. Rendall concluded that the median nerve was being compressed at both locations and recommended surgery to decompress the carpal tunnel and the pronator teres. The surgery was performed 26 June 1998.
6. Following the operation, plaintiffs condition slowly improved. He was referred for physical therapy and apparently did not perform the exercises to the satisfaction of the therapist. By 17 November 1998 Dr. Rendall decided that plaintiffs condition had improved as much as it was going to under the circumstances, so he was released from medical care. However, plaintiff subsequently returned to the company doctor and in February 1999 went back to Dr. Rendall. Dr. Rendall at that time prescribed a different medication for him. Plaintiff was then released on 23 February 1999 with a ten percent permanent partial impairment of the right arm and a ten-pound lifting restriction.
7. On 16 April 1998 plaintiff was performing his normal work duties. Although plaintiff had previously had a partner to work with, he had been working alone for a sufficient period of time that he could not remember how long it had been since the partner moved to a different job. The boxes plaintiff lifted that day were not heavier than normal and the workload was not unusual. Plaintiff was accustomed to placing the heaviest boxes on the bottom shelf. There was nothing unusual or out of the ordinary about the manner that plaintiff put the boxes on the shelves that day, nor was there an interruption of his regular work routine.
8. Although plaintiff sustained an injury arising out of and in the course of his employment on 16 April 1998, his injury was not the result of an accident.
9. Plaintiff has pursued this claim on an occupational disease theory. However, the hypothetical facts presented to the doctor for opinions regarding the increased risk issue provided that plaintiff packed 1,200 to 1,800 valves per day. That figure was approximately three to four times as many as he would actually pack in one day, which was a significant error. Since the opinion expressed by the doctor was based upon inaccurate facts, the opinion itself has not been accepted as credible. Furthermore, the doctor was not asked for an opinion regarding whether plaintiffs job activities were a significant contributing factor in the development of his arm conditions.
10. In view of the inaccurate facts presented to Dr. Rendall, plaintiff has not proven that he was placed at an increased risk of developing pronator syndrome or carpal tunnel syndrome by virtue of his job duties as compared to the general public not so employed. Furthermore, his job duties with defendant-employer were not proven to have been a significant contributing factor in the development of those conditions.
11. Consequently, plaintiff has not proven that he developed an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed.
 ***********
Based upon the foregoing and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 16 April 1998 plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. 97-2 (6).
2. In addition, plaintiff has not proven that he developed an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment and which was not an ordinary disease of life to which the general public was equally exposed. G.S. 97-53(13); Booker v. Duke Medical Center,297 N.C. 458 (1979).
3. Plaintiff is not entitled to benefits under the Workers Compensation Act for his arm conditions. G.S. 97-2 et seq.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. This claim must, under the law, be and it is hereby DENIED.
2. Each side shall pay its own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER